UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
GUILLERMO MARTINEZ,

                      Plaintiff,

            - against -

CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICERS
JOHND DOES NUMBERED ONE, TWO,
THREE, FOUR, and FIVE,
73RD PRECINCT,

                      Defendants.
----------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

12 Civ. 3806 (BMC)

**COGAN**, District Judge.

Before the Court is defendants' motion to dismiss the complaint in its entirety. For the reasons set forth below, the motion is granted.

## **BACKGROUND**

At approximately 8:50 PM on the night of August 18, 2009, plaintiff was a passenger in a car driven by his friend, Eric Brewster.[1] Officers of the New York City Police Department ("NYPD") ordered the car to pull over, asked plaintiff whether he had any weapons on him, conducted pat-down searches the car's occupants, searched the car, and ultimately placed plaintiff and the other occupants under arrest. While plaintiff was in NYPD custody, he was interviewed, photographed, and fingerprinted. After being detained for approximately 25 hours, plaintiff was released without charge. But, as a result of plaintiff's arrest, the New York State

---

[1] For the purposes of this motion to dismiss, the Court accepts as true all factual allegations in the complaint and construes all reasonable inferences in plaintiff's favor. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106 (2d Cir. 2010).

Division of Parole changed plaintiff's curfew and reporting schedule.

Plaintiff brought this suit, asserting a number of claims under 42 U.S.C. § 1983 including false arrest and unlawful search, against the City of New York (the "City") and five individual "John Doe" NYPD officers. Plaintiff filed the complaint on August 1, 2012 – mere weeks before the limitations period on plaintiff's § 1983 claims was set to expire. See Cloverleaf Realty v. Town of Wawayanda, 572 F.3d 93 (2d Cir. 2009) (recognizing a three-year statute of limitations for § 1983 actions in New York federal courts). By the time plaintiff's § 1983 limitations period had run on August 20, 2012, plaintiff had not named or served any of the individual "John Doe" defendants.

## DISCUSSION

Defendants argue that the complaint should be dismissed in its entirety because plaintiff has failed to state a claim for municipal liability under § 1983 against the City and because plaintiff's claims against the unnamed individual defendants are time-barred. In response, plaintiff argues that although the statutory period has lapsed he should be entitled to equitable tolling to amend his complaint and name the individual defendants and that his claims against the City can be cured by amendment, even if the claims against the individual defendants are dismissed.[2]

I.      Plaintiff's Claims against the Individual Defendants

Under Second Circuit law, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993) (internal citations omitted). The doctrine of equitable tolling, however, applies in those "rare and

---

[2] At the Court's request, plaintiff filed a proposed amended complaint which the Court considered in ruling on this motion.

exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act, and that party acted with reasonable diligence throughout the period he sought to toll." Walker v. Jastremski, 420 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks omitted). Equitable tolling may, for example, be available where a plaintiff failed to timely commence a suit because of a defendant's misrepresentations. See generally Aslanidis, 7 F.3d at 1075.

Plaintiff believes that he is entitled to equitable tolling because he filed a defective pleading during the statutory period. The timely filing of a defective pleading, however, does not automatically entitle plaintiff to equitable tolling absent some indication that plaintiff diligently preserved his rights and circumstances beyond his control caused his filing to be late. See Brown v. Parkchester S. Condos., 287 F.3d 58 (2d Cir. 2002) (holding that a plaintiff who timely filed a defective pleading may be entitled to equitable tolling because plaintiff's failure to comply with the statute of limitations may have been attributable to his mental disability). Cf. South v. Saab Cars USA, Inc., 28 F.3d 9 (2d Cir. 1994) (ruling that mailing a complaint to the sheriff for service on the defendant one day before the filing deadline was not "a manifestation of due diligence" deserving of equitable tolling and ordering the complaint dismissed).

Plaintiff has not suggested that anything prevented him from naming individual defendants or otherwise amending his claim in a timely fashion. Indeed, plaintiff highlights the fact that his counsel bought another lawsuit arising out of the same incident approximately two years ago. Thus, if plaintiff had "filed [his] complaint in the instant action well before the expiration of the statute of limitations [he] would have had the opportunity to learn the names of the unknown defendants through discovery." Henry v. City of New York, No. 07 Civ. 3965, 2008 WL 906743, at *4 (E.D.N.Y. Apr. 1, 2008). Plaintiff's conduct does not suggest that he

has diligently preserved his rights and, therefore, he is not entitled to equitable tolling.

Even without equitable tolling, plaintiff's claims against the individual defendants may be timely if he names the individual NYPD officers in an amended complaint that relates back to his original complaint. Under Federal Rule of Civil Procedure 15(c), an amendment naming a party relates back to the original complaint "if the claim in the amendment (1) arose out of the conduct set out in the original complaint; (2) the party to be brought in by the amendment received notice of the original action within the time period provided by Fed. R. Civ. P. 4(m) (generally 120 days); and (3) the party to be brought in 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" Dominguez v. City of New York, No. 10 Civ. 2620, 2010 WL 3419677, at *1 (E.D.N.Y. Aug. 27, 2010) (quoting Rule 15(c)(1)(C)).

Plaintiff cannot satisfy Rule 15(c). The Second Circuit has held that a plaintiff's "failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995). Consequently, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." Id. Under Barrow, any amended complaint which names individual defendants cannot be made timely under the relation back theory.[3]

Therefore, plaintiff's claims against the individual defendants are dismissed as time-

---

[3] There is a dispute within the district courts as to whether Barrow remains good law in light of the Supreme Court's subsequent decision in Krupski v. Costa Crociere S.p.A., 130 S. Ct. 2485 (2010). I have addressed this issue previously and concluded that Krupski did not overturn or limit Barrow; "Krupski merely picks up where Barrow left off. Barrow asked whether a mistake had been committed; Krupski assumes the presence of a mistake and asked whether it is covered by Rule 15(c)(1)(C)(ii)." Dominguez, No. 10 Civ. 2620, 2010 WL 3419677, at *3. Importantly, however, even if Krupski did overturn Barrow and plaintiff's failure to name defendants constituted a mistake, plaintiff has still failed to satisfy Rule 15(c)(1)(C)(ii) because plaintiff has made no showing that any proposed individual defendants knew or should have known that they should have been named as defendants. See Curry v. Campbell, No. 06-CV-2841, 2012 WL 1004894 (E.D.N.Y. Mar. 23, 2012) (rejecting plaintiff's relation back argument under either Barrow or Krupski because plaintiff failed to show the proposed new defendant knew or should have known he would be named in the suit).

4

barred. Since relation back is not available and any amendment would be futile, the claims are dismissed with prejudice. See generally Grace v. Rosenstock, 228 F.3d 40, 52-53 (2d Cir. 2000).

II.  Plaintiff's Claims against the City

It is well established that "a municipality may be found liable under Section 1983 only where the municipality itself causes the constitutional violation at issue." Jenkins v. City of New York, 478 F.3d 76, 93-94 (2d Cir. 2007) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978)). For example, a municipality may bear § 1983 liability for its policies, customs, or practices when they are the "moving force" behind a violation of constitutional rights. City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989). "But municipalities are not liable on a *respondeat superior* theory, simply because an employee committed a tort." Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011) (internal quotation marks omitted). "Section 1983 distinguishes acts of the *municipality* from acts of *employees* of the municipality, and imposes liability only for action for which the municipality is actually responsible." Id. (internal quotation marks omitted).

Defendants contend that plaintiff has not asserted any Monell allegations specifically against the City, not even "boilerplate" ones, and that allegations concerning a single incident are generally not sufficient to support Monell liability. Defendants' arguments are persuasive. While the complaint does not clearly state which causes of action plaintiff is asserting against the City under Monell, several of the claims allege only that the actions of the individual NYPD officers "occurred in and during the course and scope of their duties and functions as New York City Police Officers, and while acting as agent and employee [sic] of the [NYPD] and Defendant [the City]." By phrasing his allegations in such a way, plaintiff appears to be asserting claims against the City under a *respondeat superior* theory, which are not cognizable under § 1983.

5

Further, courts have held that a complaint "does not suffice to show a municipal policy" where, as here, it contains allegations relating only to "a single incident" and involving "only actors below the policy-making level[.]" Ricciutti v. N.Y. City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). See also Brunskill v. Cnty. of Suffolk, No. 11-CV-586, 2012 WL 2921180, at *2 (E.D.N.Y. Jul. 11, 2012) (dismissing a claim against Suffolk County based on "a single incident in which plaintiff allege[d] that he received inadequate medical care" as insufficient under Monell). Finally, plaintiff had not even pled "boilerplate" allegations regarding any City policies or customs. Cf. Smith v. City of New York, 290 F. Supp. 2d 317 (E.D.N.Y. 2003) (dismissing a Monell claim grounded in only conclusory, boilerplate assertions).

Plaintiff, for his part, does not challenge these arguments but, instead, maintains that he can amend the complaint to assert two proper Monell claims. In one claim plaintiff alleges that the NYPD improperly retained his personal information, including fingerprints and photographs. In the other, plaintiff asserts that the New York State Division of Parole changed his parole status without cause in response to his allegedly false arrest. Plaintiff's proposed amended complaint contains "boilerplate" allegations attributing these actions to City policies and practices. Even as amended, however, these allegations do not constitute cognizable claims.

Plaintiff has not identified any constitutional, statutory, or common law requirement that NYPD violated by allegedly retaining his fingerprints and photographs. The Court notes that certain provisions of New York's Criminal Procedure Law require the police to destroy or return all photographs, palmprints, and fingerprints related to dismissed criminal proceedings. See N.Y. Crim. Proc. Law § 160.50(1)(b). The New York Court of Appeals has ruled, however, that a defendant "has no inherent or constitutional right to the return of photographs, fingerprints or other indicia of arrest where the charges are dismissed[,]" People v. Patterson, 78 N.Y. 2d 711,

6

715 (1991), and that § 160.50 does not "implicate constitutional considerations[.]" Id. at 716. Since Patterson, no federal court has recognized a § 1983 claim based on a violation of § 160.50. See Walls v. New York City Police Dep't, No. 05-cv-2200, 2005 WL 1861629 (E.D.N.Y. July 29, 2005). In fact, the Second Circuit has rejected the argument that the police's use of a photograph retained in violation of § 160.50 constitutes the violation of a constitutional right. United States v. Jakobetz, 955 F.2d 786 (2d Cir. 1992). More generally, the Supreme Court has declined to recognize a right to privacy relating to arrest records. See Paul v. Davis, 424 U.S. 693, 96 S. Ct. 1155 (1976). Plaintiff, therefore, has failed to plead a violation of a constitutional right with respect to the NYPD's alleged retention of his fingerprints and photographs.

Plaintiff's claim regarding the change to his parole status cannot be asserted against the City because the claim does not satisfy § 1983's proximate causation requirement. Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999) ("A § 1983 action, like its state tort analogs, employs the principle of proximate causation."). Even if plaintiff was arrested falsely, there was an intervening actor between plaintiff's false arrest and the change to his parole status, namely the parole board. Under New York State law, parole board hearing officers are charged with making an independent determination of whether parolees have violated the conditions of their parole. See N.Y. Exec. Law § 259-i(3)(vii)-(viii). Eze v. City University of New York at Brooklyn College, No. 11-CV-2454, 2011 WL 6780652 (E.D.N.Y. Dec. 27, 2011), is instructive. There, the court dismissed a § 1983 claim against two college employees arising out of plaintiff's involuntary commitment at a psychiatric hospital. While the employees were responsible for sending plaintiff to the hospital, the court noted that the complaint was "silent as to what any of the defendants did that might have caused [the hospital] to hospitalize [plaintiff] for two weeks." Id. at *6. Further, the court reasoned that "[w]hile it is possible that [the defendants] played

some role in the decision to hospitalize [plaintiff], it is at least as likely that 'the intervening exercise of independent judgment' by [hospital] staff was a 'superseding cause' that destroyed any proximity between [defendants'] conduct and [plaintiff's] hospitalization." Id. Likewise here, the complaint contains no allegations suggesting that the City or any of its agents had any involvement in the parole board's decision to change plaintiff's parole status. The intervening actions and judgment of the parole board likely severed the causal link between the harm to plaintiff and defendants' actions. Plaintiff's proposed allegations do not suggest otherwise. Therefore, plaintiff has failed to plead a plausible § 1983 claim against the City.

## CONCLUSION

Defendants' motion to dismiss the complaint [5] is granted.

**SO ORDERED:**

s/ BMC

U.S.D.J.

Dated: Brooklyn, New York
September 24, 2012